```
1   UNITED STATES DISTRICT COURT
    EASTERN DISTRICT OF NEW YORK
2   ------------------------------x
                                        22-CR-65(CBA)
3   UNITED STATES OF AMERICA,
                                        United States Courthouse
4                                       Brooklyn, New York

5           -versus-                    March 24, 2022
                                        10:30 a.m.
6   FERNANDO GOMEZ,

7           Defendant.

8   ------------------------------x

9           TRANSCRIPT OF CRIMINAL CAUSE FOR ARRAIGNMENT
                 BEFORE THE HONORABLE CAROL B. AMON
10                  UNITED STATES DISTRICT JUDGE

11  APPEARANCES

12  For the Government:        UNITED STATES ATTORNEY'S OFFICE
                               Eastern District of New York
13                             271 Cadman Plaza East
                               Brooklyn, New York 11201
14                             BY:  BEN WEINTRAUB, ESQ.
                                    DAVID GOPSTEIN, ESQ.
15                                  RANDALL WARDEN, ESQ.
                                    SHAUNIK PANSE, ESQ.
16                             Assistant United States Attorneys

17
    For the Defendant:         BY:  BRUCE UDOLF, ESQ.
18

19  Court Reporter:            Rivka Teich, CSR, RPR, RMR, FCRR
                               Phone:  718-613-2268
20                             Email:  RivkaTeich@gmail.com

21  Proceedings recorded by mechanical stenography.  Transcript
    produced by computer-aided transcription.
22

23

24

25
```

ARRAIGNMENT/GUILTY PLEA

1            (In open court.)

2            THE COURTROOM DEPUTY:  All Rise.  The Honorable

3  Judge Amon is now presiding.

4            Criminal cause for an arraignment and a guilty plea

5  on United States vs. Fernando Martinez Gomez on docket number

6  22-CR-65.

7            May I have the appearances for the Government,

8  please.

9            MR. WEINTRAUB:  Good morning, your Honor.  Benjamin

10  Weintraub for the United States.  I'm joined at counsel's

11  table by Shaunik Panse from the money laundering and asset

12  recovery section, Randall Warden from the Department of

13  Justice fraud section, David Gopstein from the US Attorney's

14  Office for the Eastern District of New York, and Special Agent

15  Jeffrey Lamaran (ph) from the IRS.

16            THE COURTROOM DEPUTY:  Thank you.

17            For the defendant.

18            MR. UDOLF:  Good morning, your Honor.  Bruce Udolf

19  on behalf of Fernando Martinez Gomez, who is present in court.

20            THE COURTROOM DEPUTY:  Thank you.  Please be seated.

21            THE COURT:  Counsel, you just recently filed your

22  notice of appearance, correct?

23            MR. UDOLF:  Correct, your Honor.

24            THE COURT:  And you don't have a U.S. office -- I

25  mean a New York office?

ARRAIGNMENT/GUILTY PLEA

1          MR. UDOLF:  I do not, your Honor.

2          THE COURT:  You know that you're going to be

3    responsible for being here at all the status conferences and

4    court appearances that we have.  I'm not going to be doing any

5    of this by Zoom, so I want you to understand that.

6          MR. UDOLF:  I do understand that, your Honor.

7          THE COURT:  All right.

8          Now, I know you came into this case fairly recently.

9    Are you prepared to proceed?

10         MR. UDOLF:  I am, your Honor.

11         THE COURT:  Your client -- you've had a sufficient

12   time to discuss the issues with your client about pleading

13   guilty?

14         MR. UDOLF:  I have, your Honor.

15         THE COURT:  Mr. Martinez Gomez, let me ask you that,

16   since your counsel is so new to this case.

17         Have you had an adequate opportunity to discuss what

18   I'm told are the two decisions that you want to make today?

19   Number one is to waive Indictment and permit the Government to

20   file a felony information, and second of all I'm told that you

21   wish to plead guilty to that information.

22         THE DEFENDANT:  Yes, your Honor.

23         THE COURT:  Have you had enough time to discuss this

24   decision with your counsel?

25         THE DEFENDANT:  Yes, your Honor.

4

ARRAIGNMENT/GUILTY PLEA

1          THE COURT:  All right.

2          This is a rather lengthy Information.  If the

3    Government could just perhaps tell me in summary form what the

4    allegations are with regard to the two different counts.  In

5    perusing the Information, I understand the two different

6    counts to be related to really separate activity, correct?

7          MR. WEINTRAUB:  Yes, your Honor.

8          THE COURT:  They're not -- the bribery scheme -- the

9    money laundering in connection with the bribery scheme and

10   wire fraud are two separate transactions?

11         MR. WEINTRAUB:  Correct.  There is a money

12   laundering scheme and a wire fraud scheme.

13         THE COURT:  Okay.  If you could just perhaps in

14   summary form explain the money laundering scheme and what it

15   is that the defendant would need to allocute to and the wire

16   fraud scheme.  Because it's a bit complex in terms of --

17         MR. WEINTRAUB:  Absolutely, your Honor.

18         With respect to the money laundering scheme --

19         THE COURT:  It's a conspiracy, to begin with, right?

20         MR. WEINTRAUB:  -- it's a conspiracy, yes.  The

21   underlying substantive crime is money laundering.  The scheme

22   occurred, as alleged in the Information, between 2013

23   approximately to March 2018.  During that period, Mr. Martinez

24   was a financial adviser to, among others, Mr. Rivas, who the

25   chairman of a -- insurance companies that were owned by the

Rivka Teich CSR RPR RMR FCRR
Official Court Reporter

ARRAIGNMENT/GUILTY PLEA

1    Ecuadorian government as well as other Ecuadorian government

2    officials.  During that time he assisted in the concealment

3    and disguising of bribe payments that were made to those

4    officials in exchange for those officials' assistance in

5    steering insurance contracts to certain companies, as referred

6    to in the Information.

7           With respect to that scheme, the Government would

8    prove its case through cooperator testimony, which would be

9    corroborated by financial documents, fax and e-mail

10   communications between Mr. Martinez and his co-conspirators.

11          THE COURT:  Well, in essence, Mr. Martinez assisted

12   in moving money, i.e., money laundering, of bribe payments.

13          MR. WEINTRAUB:  That's precisely right.

14          THE COURT:  And the bribe payments were bribe

15   payments made to whom?

16          MR. WEINTRAUB:  To officials of the Ecuadorian

17   government who controlled or had roles in controlling

18   Ecuadorian government insurance contracts.

19          THE COURT:  Who had roles in controlling what?  I'm

20   sorry.

21          MR. WEINTRAUB:  Ecuadorian government insurance

22   contracts.

23          THE COURT:  And the wire fraud count?

24          MR. WEINTRAUB:  Yes, your Honor.  The wire fraud

25   count, again, is a conspiracy with the substantive underlying

ARRAIGNMENT/GUILTY PLEA

1   crime being wire fraud.  Between approximately August 2013 to

2   March 2017, the defendant, in concert with others, including

3   Roberto Cortez, Ernesto Weisson, and Gustavo Trujillo, among

4   others, solicited and obtained investments from clients of

5   company known as Biscayne Capital.  The solicitation and

6   receipt of those investments were based on misrepresentations

7   that, among other things, the clients' funds would be used for

8   certain specific purposes, such as real estate investment or

9   the purchase referred to as proprietary products that were

10  marketed by Biscayne Capital.  In reality, those funds were

11  used for a number of different purposes, including to make

12  interest and principal payments to other Biscayne Capital

13  clients in order to pay the defendant and other Biscayne

14  Capital executives to make some of the bribe payments that are

15  described and discussed in the subject of the Count 1 scheme,

16  and to separately fund a separate business that Mr. Martinez

17  was engaged in, which was a currency exchange business with a

18  Venezuelan partner.

19          THE COURT:  So the counts are related?

20          MR. WEINTRAUB:  Well, there are two separate

21  schemes.  There's a little bit of overlap in the sense that

22  some of the money that was misappropriated from Biscayne

23  Capital clients, which is the real thrust of Count 2, was used

24  to make the bribe payments that are the subject of Count 1.

25          THE COURT:  You have a whole series of overt acts

ARRAIGNMENT/GUILTY PLEA

1   here, beginning on page 15.

2         Just for purposes of the allocution, which overt act

3   will the defendant be allocuting to?

4         MR. WEINTRAUB:  I won't speak directly for the

5   defendant.  I believe, though, based on conversations that

6   he -- Mr. Martinez, with respect to the overt acts on page 15

7   which relate to -- sorry.

8         Let me start with the overt acts that relate to

9   Count 1, which begin on page 13.

10        THE COURT:  I'm sorry.  Okay.  Okay.

11        Well, perhaps counsel can answer that question.

12  Maybe it's more appropriately addressed to counsel.

13        Which overt acts is your client going to allocute

14  to?

15        MR. UDOLF:  Judge, he is going to admit to all of

16  the overt acts that are alleged, starting on Count 13 and

17  continuing to Count 14 and as to Count 2, starting on 15 and

18  ending on page 17.  He doesn't dispute any of those acts.

19        THE COURT:  Well, I know.  There's a difference

20  between not disputing and allocuting to them, though.

21        I'm just trying to -- so we don't end up taking

22  longer than necessary.  He intends to actually to admit to

23  each of the overt acts in his allocution?

24        MR. UDOLF:  He was going to admit to them generally

25  and give a general summary as to what all of those -- the

ARRAIGNMENT/GUILTY PLEA

1    meaning of those overt acts.  If the Court wants to inquire

2    further to him as to details, he'll be happy to answer those

3    questions.

4            THE COURT:  All right.

5            Perhaps the Government can articulate for the Court.

6            The specified unlawful activity set forth in Count

7    1, felony violations of the federal -- the Foreign Corrupt

8    Practices Act, correct?

9            MR. WEINTRAUB:  Yes, your Honor.

10            THE COURT:  What the are the elements of that

11    offense?

12            MR. WEINTRAUB:  Okay.  There are a number.

13            However, the first is that the defendant is a

14    domestic concern within the meaning of the statute.

15    Mr. Martinez being a U.S. citizen as well as employee of a

16    Miami-based company would qualify as such.

17            Second, that the defendant acted corruptly and

18    willfully.

19            Third, that the defendant made use of the mails or

20    any means or instrumentality of interstate commerce in

21    furtherance of the unlawful acts.

22            Fourth, that the defendant offered or paid or

23    promised to pay or authorized the payment of anything of value

24    or money.

25            Fifth, that the payment or gift was to a foreign

ARRAIGNMENT/GUILTY PLEA

1   official while the defendant knew that all or a portion of the

2   gift would be given or offered or promised either directly or

3   indirectly to that foreign official.  In this case we have the

4   Ecuadorian government officials.

5           Sixth, that the payment was for one of a number of

6   purposes, but as relevant here, at least, influencing any act

7   or decision of such foreign official in his official capacity.

8           Seventh, that the payment was made in order to

9   assist the defendant in either retaining business for or

10  directing business to any person.

11          THE COURT:  Now, what is the Government's theory,

12  that Mr. Martinez did this himself or laundered money knowing

13  that that had been done?

14          MR. WEINTRAUB:  Yes, your Honor.  Well, in terms of

15  knowing the source of the money, these are conversations that

16  he had with Mr. Gomez, whose full name is Jose Vicente Gomez

17  Aviles, as discussed in the information.

18          And in terms of the actual participation, Mr. --

19          THE COURT:  He was the federal foreign official who

20  was paid off?

21          MR. WEINTRAUB:  No.  He is the owner of the -- what

22  is referred to in the information as Introducer Company One.

23  So you have a scheme where you have the Ecuadorian government

24  handing out or has insurance contracts, and then you have

25  another company referred to as Reinsurance Broker 1, which is

ARRAIGNMENT/GUILTY PLEA

1    a reinsurance company that would like to obtain the business

2    of the Ecuadorian government.  And then you have another

3    company referred to as Introducer Company 1, and that company

4    facilitates business between entities that have insurance

5    contracts to give out, such as the Ecuadorian government, and

6    companies that provide insurance services, such as Reinsurance

7    Company 1.

8         And the way the scheme worked is that after winning

9    or obtaining the insurance contracts from the Ecuadorian

10   government, Reinsurance Company 1 would send commissions to

11   Introducer Company 1.  Introducer Company 1 would then funnel

12   a portion of those commissions to the Ecuadorian government

13   officials who were instrumental in awarding that insurance

14   contract to the reinsurance company.

15        And Mr. Martinez, who was an adviser, financial

16   adviser to the Ecuadorian government officials who were the

17   recipients of those bribes, was directly responsible for

18   initiating money transfers to that individual's bank accounts.

19        THE COURT:  All right.  So the Government's theory

20   is that Mr. Martinez is a financial adviser to the Ecuadorian

21   government officials who were taking the bribes?

22        MR. WEINTRAUB:  That's right.

23        THE COURT:  All right.  So -- and then he launders

24   that money for the Ecuadorian officials?

25        MR. WEINTRAUB:  That's right.

ARRAIGNMENT/GUILTY PLEA

1          THE COURT:  But with understanding of the scheme

2     that has gone on?

3          MR. WEINTRAUB:  That's right.  He is a relative of

4     the owner of the introducer company.

5          MR. UDOLF:  They're cousins, your Honor.  The

6     defendant is a cousin of Mr. Gomez.

7          THE COURT:  I'm sorry.  Gomez works for the

8     introducer company?

9          MR. WEINTRAUB:  Yes.

10          THE COURT:  So the introducer company gets money

11     from the reinsurance company in the form of commissions,

12     supposed commissions, and that's actually bribe money that is

13     then funneled to the Ecuadorian government officials, and then

14     Mr. Martinez, who's a financial adviser to the Ecuadorian

15     government officials, launders the money; is that --

16          MR. WEINTRAUB:  A portion of the money that goes

17     from the reinsurance company to the introducer company is

18     funneled back to the Ecuadorian government with the aid of

19     Mr. Martinez, and that portion is the bribe.

20          THE COURT:  So in addition to laundering the bribe

21     money that goes to the Ecuadorian officials, he's actually

22     responsible for the money getting to them as well?  Or am I

23     missing something?

24          MR. WEINTRAUB:  I think it's part and parcel -- yes.

25     He's responsible, in part, for both aspects.

ARRAIGNMENT/GUILTY PLEA

1          MR. WARDEN:  Your Honor, this is Randall Warden.

2          I think the Government's theory and the facts

3    alleged are that in that role of getting money to -- the bribe

4    money to the government officials, he is serving as a

5    financial intermediary in laundering that money.  The payments

6    and getting them to the government officials are part of the

7    laundering scheme here.

8          THE COURT:  So the laundering is done in connection

9    with getting the money to the officials; it's not money

10   laundered after they have the money?

11         MR. WARDEN:  It's both, your Honor.  Part of the

12   concealment, your Honor, is that there are shell company

13   accounts that Mr. Martinez has access to to get the money to

14   the government officials.  That's part of the concealment

15   aspect of the money laundering.

16         THE COURT:  It may well be that the Government will

17   need to assist in asking questions to establish a factual

18   basis for the plea, because this is very confusing, and also

19   ensuring that the pleas are to the requisite overt acts,

20   because they're both conspiracy charges.

21         Mr. Martinez, your counsel tells me that you want to

22   do two things today, and they're both very important.  First

23   of all is that you wish to waive Indictment and permit the

24   Government to file two charges in what's called a felony

25   Information.

ARRAIGNMENT/GUILTY PLEA

1          And then I'm told that after that, you, in fact,

2   wish to enter guilty pleas to two counts -- to the two counts

3   in that Information.

4          Now, both of these decisions are very serious

5   decisions, so I have to make sure that you understand all of

6   your rights and the consequences of your plea.  That means

7   that I will have to ask you a whole series of questions, and I

8   do require that your answers to my questions be made under

9   oath, so my courtroom deputy will administer an oath to have

10  you tell the truth.

11          (Defendant sworn.)

12          THE COURTROOM DEPUTY:  State your full name for the

13  record.

14          THE DEFENDANT:  Fernando Martinez.

15          THE COURT:  All right.  You can be seated now and

16  speak directly into the mic.

17          Having been sworn to tell the truth, you have to do

18  that.  If you were to lie on purpose in response to any

19  question that I ask, you could face a further criminal charge

20  for perjury or false statement.

21          Do you understand that?

22          THE DEFENDANT:  I do, your Honor.

23          THE COURT:  If there's anything that I say that you

24  don't understand, please stop me and tell me that you don't

25  understand it and I'll try and make it plainer.

ARRAIGNMENT/GUILTY PLEA

1              Is that clear?

2              THE DEFENDANT:  That's clear, your Honor.

3              THE COURT:  All right.  First of all, how old are

4      you?

5              THE DEFENDANT:  Forty-four.

6              THE COURT:  How far in school did you go?

7              THE DEFENDANT:  I got a master's in business

8      administration.

9              THE COURT:  Are you presently or have you recently

10     been under the care of a doctor, including a psychiatrist, for

11     any reason?

12             THE DEFENDANT:  No, your Honor.

13             THE COURT:  In the past 24 hours, have you had any

14     pills, drugs, medicine, or alcohol of any kind?

15             THE DEFENDANT:  No, your Honor.

16             THE COURT:  Is your mind clear today?

17             THE DEFENDANT:  I'm sorry?

18             THE COURT:  Is your mind clear?

19             THE DEFENDANT:  It is very clear, your Honor.

20             THE COURT:  Counsel, have you discussed the question

21     of both of waiving an Indictment and entering a guilty plea

22     with your client?

23             MR. UDOLF:  I have, your Honor.

24             THE COURT:  In your view, does he understand the

25     rights he's waiving by waiving Indictment and by entering the

ARRAIGNMENT/GUILTY PLEA

1  guilty plea?

2          MR. UDOLF:  Yes.

3          THE COURT:  Do you have any question at all about

4  his competency to proceed?

5          MR. UDOLF:  None.

6  BY THE COURT:

7          THE COURT:  Mr. Martinez, have you had a full

8  opportunity to discuss with your attorney the decision to

9  waive Indictment and to enter a guilty plea to the charges in

10  the information?

11          THE DEFENDANT:  Yes, your Honor.

12          THE COURT:  Are you satisfied to have him represent

13  you?

14          THE DEFENDANT:  Yes, your Honor.

15          THE COURT:  All right.  Now, let me just briefly

16  discuss the charges with you.

17          First of all, have you read over the 19-page

18  information that the Government seeks to file today?

19          THE DEFENDANT:  Yes, your Honor.

20          THE COURT:  Did you understand what is charged in

21  the two counts in that Information, what crimes are charged?

22          THE DEFENDANT:  Yes, your Honor.

23          THE COURT:  Did you discuss with your attorney what

24  it is that the Government would have to prove in support of

25  those charges?

ARRAIGNMENT/GUILTY PLEA

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  There are two charges.  One is a

3    conspiracy to commit money laundering, and it charges, in

4    substance, that between 2013 and 2018 that you and others

5    knowingly and intentionally conspired to conduct one or more

6    financial transactions, and they identify those as wire

7    transfers of money, which were the proceeds of an unlawful

8    activity, and the unlawful activity is violation of the

9    Foreign Corrupt Practices Act, knowing that the financial

10   transactions represented the proceeds of some form of unlawful

11   activity and knowing that the transactions were designed in

12   whole or in part to conceal and disguise the nature, location,

13   source, and ownership of the control of proceeds of the

14   specified unlawful activity and transport -- transfer and

15   attempt to transport and transmit funds from a place in the

16   United States to and through a place outside the United States

17   and to a place in the United States from and through a place

18   outside of the United States with the intent to promote the

19   carrying on of the specified unlawful activity.  And then it

20   alleges that you committed a series of overt acts.

21          Count 2 is a wire fraud charge, and that charge is

22   that you conspired -- again, it's a conspiracy to commit wire

23   fraud -- that you conspired to devise a scheme to defraud

24   clients in Biscayne Capital of money and property and for the

25   purposes of executing that scheme, you caused wire

ARRAIGNMENT/GUILTY PLEA

1  communications in interstate and foreign commerce.  And then

2  it lists a whole series of overt acts.

3          Now, these charges -- these are charges.  They're

4  felony charges.  The Government cannot come to court as it

5  seeks to do today and file these charges in the form of an

6  Information unless you agree to it.

7          Do you understand that?

8          THE DEFENDANT:  I do, your Honor.

9          THE COURT:  And the agreement to permit them to do

10  that is referred to as waiving Indictment.  They refer to it

11  as waiver of Indictment because, as I mentioned earlier, the

12  Government, unless you consented, could not simply come to

13  court and file these charges.  What they would have to do is

14  present evidence to a Grand Jury.  And a Grand Jury is a body

15  of 23 citizens.  They would have to persuade a majority of the

16  members of the Grand Jury that there was probable cause to

17  believe that you committed these two offenses.  If the Grand

18  Jury found that they'd met that burden, they would return the

19  two charges in the form of what's called an Indictment.  If

20  they found that the evidence was insufficient, then no charges

21  would be brought against you.

22          Do you understand that?

23          THE DEFENDANT:  I do understand that, your Honor.

24          THE COURT:  So when you waive Indictment, what

25  you're agreeing to is letting the Government bypass the Grand

ARRAIGNMENT/GUILTY PLEA

1    Jury and instead just come to court and file the charges.

2    That's referred to as waiving Indictment, because you're

3    giving up the right to have the Grand Jury decide whether

4    these charges should be returned by Indictment.

5              Do you understand that?

6              THE DEFENDANT:  I do, your Honor.

7              THE COURT:  Have you discussed with your attorney

8    whether you should waive Indictment?

9              THE DEFENDANT:  Yes, your Honor.

10             THE COURT:  Do you wish to waive Indictment?

11             THE DEFENDANT:  I do, your Honor.

12             THE COURT:  Has anyone threatened, forced, or

13   pressured you in any way to make this decision?

14             THE DEFENDANT:  No, your Honor.

15             THE COURT:  All right.  Then I'll approve the

16   waiver.

17             I explained the charges to you here in summary form.

18   Is it correct that you have discussed in detail with your

19   lawyer --

20             THE DEFENDANT:  Yes, your Honor.

21             THE COURT:  -- what the -- let me finish -- what the

22   Government would have to prove in support of each of these

23   charges?

24             THE DEFENDANT:  Yes, your Honor.

25             THE COURT:  And you believe you understand the

ARRAIGNMENT/GUILTY PLEA

1    charges?

2             THE DEFENDANT:  I do, your Honor, yes.

3             THE COURT:  All right.  Let me go over with you now,

4    since I'm permitting the charges to be filed, the rights that

5    you have.  And these will be rights that you relinquish, give

6    up, if you decide to plead guilty to these two charges.  So

7    even though you've allowed the Government to file the charges,

8    you still would have all of these rights that I'm going to

9    discuss with you.  In other words, you could have a jury trial

10   on these charges, even though it's in the form of an

11   Information.

12            Do you understand that?

13            THE DEFENDANT:  I do, your Honor.

14            THE COURT:  All right.

15            Now, first of all, you have a right to plead not

16   guilty to these charges even though they're in an Information

17   and you've agreed to let them be filed.

18            Do you understand that?

19            THE DEFENDANT:  I do, your Honor.

20            THE COURT:  If you pled not guilty to the charges,

21   you would have, as I mentioned a moment ago, a right under the

22   Constitution and laws of the United States to a speedy and

23   public trial before a jury with the assistance of your

24   attorney.

25            Do you understand that?

ARRAIGNMENT/GUILTY PLEA

1          THE DEFENDANT:  I do, your Honor.

2          THE COURT:  At any trial you would be presumed

3   innocent.  You don't have to prove you're innocent.  It is the

4   Government that has the burden of proof, and that is proof

5   beyond a reasonable doubt that you're guilty of the crimes

6   charged.

7          If the Government failed to meet the burden of

8   proof, the jury would have the duty to find you not guilty.

9          Do you understand?

10          THE DEFENDANT:  I do, your Honor.

11          THE COURT:  Now, in the course of a trial, witnesses

12   for the Government would have to come here to court and they

13   would have to testify in your presence.  Your lawyer would

14   have the right to cross-examine these witnesses.  He could

15   raise objections to evidence the Government sought to offer

16   against you.  He could offer evidence in this your behalf.  He

17   would also have the right to subpoena witnesses -- in other

18   words, make witnesses come to court -- if he believes that

19   those witnesses would offer testimony favorable to your case.

20          Do you understand that?

21          THE DEFENDANT:  I do, your Honor.

22          THE COURT:  At trial you would have the right to

23   testify on your own behalf if you wanted to.  On the other

24   hand, you could not be forced to be a witness at your trial.

25   Under the Constitution and laws of the United States, no

ARRAIGNMENT/GUILTY PLEA

1   person can be made to be a witness against himself.  So if you

2   wanted to go to trial, if you decided not to testify, I would

3   tell the jury they could not hold that against you.

4           Do you understand?

5           THE DEFENDANT:  Yes, I do, your Honor.

6           THE COURT:  Now, if instead of going to trial you

7   plead guilty to the two crimes that are charged, if I accept

8   your guilty plea you will be giving up your right to a trial

9   and all the other rights I've just discussed.  There will be

10  no trial in this case and no right to an appeal on the

11  question of whether you did or did not commit the offense.  I

12  simply enter judgments of guilty based upon your plea.

13          Do you understand?

14          THE DEFENDANT:  I do understand, your Honor.

15          THE COURT:  If you do plead guilty, I'm going to

16  have to ask you questions about what you did in order to

17  satisfy myself that you are guilty of the crimes charged.

18  You'll have to answer my questions and admit your guilt.  That

19  means you'd be giving up your right not to incriminate

20  yourself.

21          Do you understand?

22          THE DEFENDANT:  I do, your Honor.

23          THE COURT:  Are you willing to give up your right to

24  a trial and all the other rights I've just discussed?

25          THE DEFENDANT:  Yes, your Honor.

ARRAIGNMENT/GUILTY PLEA

1          THE COURT:  All right.

2          Now, I have an agreement which has been marked

3   Government's Exhibit 1.  It is a 12-page document placed

4   before the court.

5          THE COURT:  Let me ask the Government:  Do you

6   represent, Counsel, on behalf of the United States Attorney's

7   Office that the document before the Court contains the

8   entirety of any understanding that your office has reached

9   with this defendant?

10          MR. WEINTRAUB:  Yes.

11          THE COURT:  Counsel, is that your understanding as

12   well?

13          MR. UDOLF:  It is, your Honor.

14          THE COURT:  All right.

15   BY THE COURT:

16          THE COURT:  Mr. Martinez, have you read through this

17   agreement?

18          THE DEFENDANT:  I did, your Honor.

19          THE COURT:  Have you discussed the various

20   provisions of the agreement with your counsel?

21          THE DEFENDANT:  I did, your Honor.

22          THE COURT:  Do you believe you understand each of

23   the provisions of the agreement?

24          THE DEFENDANT:  I do, your Honor.

25          THE COURT:  Is there anything at all in this

ARRAIGNMENT/GUILTY PLEA

1    agreement that is not clear that you need explained in any

2    detail now?

3              THE DEFENDANT:  No, your Honor.

4              THE COURT:  Did the Government make a promise to you

5    that is not contained within this agreement?

6              THE DEFENDANT:  No, your Honor.

7              THE COURT:  On page 3, the last paragraph, you waive

8    another right that you have, and I want to make sure that you

9    understand that.

10             It says "The defendant agrees not to file an appeal

11   or otherwise challenge by petition, pursuant to 28 U.S.C.

12   Section 2255 or any other provision, the conviction or

13   sentence in the event that the Court imposes a term of

14   imprisonment of 121 months or below."

15             And you're also agreeing in terms of the waiver, the

16   two specific issues:  That you the waive the right to raise on

17   appeal or on collateral review any argument that the statutes

18   to which you're pleading guilty are unconstitutional or that

19   your admitted conduct does not fall within the scope of the

20   statutes.

21             Do you understand what you're waiving here in

22   connection with this agreement?

23             THE DEFENDANT:  Yes, your Honor.

24             THE COURT:  All right.

25             Now, the first thing is waiving any challenge to

ARRAIGNMENT/GUILTY PLEA

1   your sentence in the event that the Court imposes a term of

2   imprisonment of 121 months or below.  What I understand that

3   provision to mean is if I give you ten years or something less

4   than ten years, you're agreeing that you can't go to a higher

5   court and appeal your sentence even if you think that I made a

6   mistake in imposing your sentence.

7          Do you understand that?

8          THE DEFENDANT:  I do understand that, your Honor.

9          THE COURT:  And further, that also refers to

10  collateral review.  28 U.S. Section 2255 is a habeas corpus

11  provision that -- you invoke that statute if you're already in

12  prison and you think that there was something unconstitutional

13  about your conviction.

14         And you're also agreeing to waive any right to bring

15  a claim under that statute in the event that I give you a

16  sentence of less than ten years.

17         Do you understand that?

18         THE DEFENDANT:  Yes, your Honor.

19         THE COURT:  And specifically, you're agreeing both

20  on appeal and collateral review, that habeas corpus, I

21  mentioned to you, you can't make any argument, according to

22  the agreement, now, that the statutes that you're pleading

23  guilty to were unconstitutional or that what you admit today

24  in your plea didn't fall within the statutes.  You won't be

25  able to make that kind of argument on appeal or later.

ARRAIGNMENT/GUILTY PLEA

1          Do you understand that?

2          THE DEFENDANT:  I do, your Honor.

3          THE COURT:  Anyone threaten or force you to give up

4     those appellate rights?

5          THE DEFENDANT:  No, your Honor.

6          THE COURT:  Let me go over now the maximum penalties

7     of these offenses.

8          Turning to Count 1 first, which is the money

9     laundering conspiracy count.  That carries a prison term of

10    five years.

11         Do you understand that?

12         THE DEFENDANT:  I do, your Honor.

13         THE COURT:  That's the maximum prison term.  When

14    the Court imposes a prison term, I can follow that by a period

15    of what's referred to as supervised release.  Now, supervised

16    release begins after you serve your prison term.  You're

17    released, but you're on supervised released.  There's certain

18    conditions that govern your conduct.  And here the maximum

19    term of supervised release is three years.  Were you to

20    violate any of the terms or conditions of your supervised

21    release, I could send you back to prison for two full years

22    without giving you any credit for the time you'd spent on

23    supervised release.

24         Do you understand that?

25         THE DEFENDANT:  I do, your Honor.

ARRAIGNMENT/GUILTY PLEA

1          THE COURT:  Now, there are financial penalties here.

2          THE DEFENDANT:  What is the maximum fine, according

3     to the Government?

4          MR. WEINTRAUB:  Your Honor, it's $250,000 or twice

5     the gross gain or loss, whichever is greater.

6          THE COURT:  Yeah, I got that.  We're talking about

7     twice the gross gain or loss.  What would that be?  Or do you

8     know?

9          MR. WEINTRAUB:  I'm not sure if we have that

10    calculated at the moment.

11         THE COURT:  You don't have an estimate of how much

12    money the defendant acquired as a result of engaging in the

13    money laundering scheme?

14         MR. WEINTRAUB:  Your Honor, there's a forfeiture

15    amount which we believe is a representation of the amount.

16    The forfeiture amount is $1 million, so the maximum fine would

17    be twice that.

18         THE COURT:  That's the agreed-upon forfeiture in

19    paragraph 6, right?

20         MR. WEINTRAUB:  Yes, your Honor.

21         MR. UDOLF:  Can I see that?

22         MR. WEINTRAUB:  The copy of the agreement?

23         May I, your Honor?

24         THE COURT:  Sure.

25         Don't you have a copy of the agreement, Counsel?

ARRAIGNMENT/GUILTY PLEA

1          MR. UDOLF:  I don't have it with me.  I have an

2    electronic copy.

3          THE COURT:  And you've obviously read it and gone

4    over it with your client.

5          MR. UDOLF:  I have.

6          THE COURT:  It's paragraph 6.

7          MR. UDOLF:  Thank you.

8          THE COURT:  Are you satisfied?  Had the opportunity

9    to review that?

10          MR. UDOLF:  Yes.

11          THE COURT:  All right.

12    BY THE COURT:

13          THE COURT:  So let me back up, Mr. Martinez.  We're

14    talking about financial penalties now, and what fine to impose

15    is within the discretion of the Court, but I need to tell you

16    what the maximum fine that I could impose would be.

17          According to the Government that the gain would be a

18    million dollars, and since I can impose a fine that's twice

19    the amount of the gain, that means the maximum fine to which

20    you'd be exposed would be approximately $2 million.

21          Do you understand that?

22          THE DEFENDANT:  I do understand that, your Honor.

23          THE COURT:  All right.  Another penalty of this is

24    criminal forfeiture.  And the criminal forfeiture amount that

25    the Government has set forth is a million dollars, and in your

ARRAIGNMENT/GUILTY PLEA

1    agreement, you agree to that amount of forfeiture.

2              Do you understand that?

3              THE DEFENDANT:  I understand that, your Honor.

4              THE COURT:  Okay.

5              THE COURT:  And then the restitution is not

6    applicable; is that right?  On this count, the money

7    laundering count?

8              MR. WEINTRAUB:  That's right, your Honor.

9    BY THE COURT:

10             THE COURT:  And then there is a $100 special

11   assessment, and I must impose that $100 special assessment.

12             Do you understand that?

13             THE DEFENDANT:  I understand that.

14             THE COURT:  Do you believe that you fully understand

15   the financial penalties, then?

16             THE DEFENDANT:  I do, your Honor.

17             THE COURT:  Okay.

18             Now, other penalties, it says denaturalization.

19             MR. WEINTRAUB:  Yes, your Honor.  The Government

20   would direct you to paragraph --

21             THE COURT:  So the theory of denaturalization that

22   you have in the plea agreement I guess would be if admissions

23   in his -- in pleading guilty suggest that something that he

24   said on his application for naturalization was false,

25   materially false or if something that was material was omitted

ARRAIGNMENT/GUILTY PLEA

1    would cause him to face denaturalization?

2            MR. WEINTRAUB:  Yes.

3            THE COURT:  And that's a possibility here?

4            MR. WEINTRAUB:  It's a possibility.  Unlikely.  The

5    Government does not foresee that occurring, but it is, in

6    theory.

7            MR. UDOLF:  Your Honor, we would agree that that

8    particular section is not applicable to this defendant.  He

9    didn't obtain his naturalization as a result of any

10   concealment of any fact, so we don't think it's of

11   consequence.

12           We recognize, however, that it's out of our hands

13   and this Court's hands and the Government's hands.  That's

14   what I understand this paragraph to say.

15   BY THE COURT:

16           THE COURT:  When were you naturalized?  How long

17   ago?

18           THE DEFENDANT:  A long time ago, your Honor.

19   Between 2004 and 2005, your Honor.

20           THE COURT:  Okay.  Essentially the way I understand

21   that pleading guilty could subject you to denaturalization and

22   then removal from the country.

23           Let me explain.  Generally, if you were a United

24   States citizen, the general rule that even if you plead guilty

25   to a serious felony, you can't be deported.  You can only be

Rivka Teich CSR RPR RMR FCRR
Official Court Reporter

ARRAIGNMENT/GUILTY PLEA

1    deported if you are not a U.S. citizen.

2         Now, what the Government is saying here is the

3    possibility always exists that in the course of pleading

4    guilty, you may say something that would make either a

5    statement on your original naturalization certificate false or

6    you would have omitted something material.  And if that

7    happened, then quite apart from this Government's -- I mean

8    the U.S. Attorney's Office involvement, the Immigration and

9    Naturalization Service could institute what they call

10   denaturalization proceedings, and then you could be removed

11   from the country.

12        So if something came up in terms of your guilty

13   plea, if that would show that you made some false statement or

14   omitted to say something that you should have said that was

15   material, then that process could result, would have the

16   potential to result, and you would be -- could be removed from

17   the country.

18        Do you understand that is a consequence of pleading

19   guilty?  Is that clear to you?

20            THE DEFENDANT:  I do.  I do, your Honor.

21            THE COURT:  Okay.

22        Now, the second count.  There are two counts.  The

23   second count is conspiracy to commit wire fraud.  That carries

24   the same penalty, five years, as the money laundering charge,

25   but the Court has to the power to sentence what they call

ARRAIGNMENT/GUILTY PLEA

1  consecutively; in other words, to add the two together.  So I

2  could give you five years on Count 1, an additional five years

3  on Count 2, which means that by pleading guilty to both

4  counts, you face a potential penalty of ten years in jail.

5          Do you understand that?

6          THE DEFENDANT:  I do, your Honor.

7          THE COURT:  This has the same supervised release

8  term that I mentioned earlier, which is maximum supervised

9  release of three years, and if you violated the terms and

10  conditions, you'd go back to prison for two years.

11          My understanding is that is not consecutive.  In

12  other words, even though it's two counts, the supervised

13  release term would be three years.

14          Do you understand that?

15          THE DEFENDANT:  I understand.

16          THE COURT:  Does the Government have a different

17  view?  You're looking at me funny.

18          MR. WEINTRAUB:  No, no, no.

19          THE COURT:  Maybe it's just the mask.

20  BY THE COURT:

21          THE COURT:  Again, the fine is $250,000.

22          THE COURT:  Would the same apply here, the million

23  dollars?

24          MR. WEINTRAUB:  Yes, your Honor.

25          THE COURT:  And is the forfeiture, the

ARRAIGNMENT/GUILTY PLEA

1  million-dollar forfeiture in paragraph E, it's the same

2  million-dollar forfeiture for both of them, right?

3         MR. WEINTRAUB:  Yes.

4         THE COURT:  Okay.

5  BY THE COURT:

6         THE COURT:  So, again, the fine on this count could

7  also be as high as $2 million.  That monetary fine can be

8  consecutive, so that means you would face a $4 million

9  potential fine.

10         Do you understand that?

11         THE DEFENDANT:  I understand that, your Honor.

12         THE COURT:  Again, the statute has a criminal

13  forfeiture provision, and you've agreed, pursuant to the terms

14  of your agreement, that that forfeiture amount is $1 million.

15         Do you understand that?

16         THE DEFENDANT:  I understand that, your Honor.

17         THE COURT:  And If I'm correct, that $1 million

18  forfeiture covers both counts; is that right?

19         MR. WEINTRAUB:  Yes.

20         THE COURT:  Okay.

21  BY THE COURT:

22         THE COURT:  Now, there's another monetary penalty

23  with respect to this count because it's a fraud count.  That

24  means that you have victims, and restitution can be ordered to

25  the victims -- indeed, has to be ordered to the victims.

ARRAIGNMENT/GUILTY PLEA

1          So if victims come in and say that I lost so much

2    money through this scheme, the clients of Biscayne Capital

3    whose money wasn't invested where they thought it was going,

4    if they come forth and I have evidence of losses, I am

5    required to order that restitution.  Again, that's something

6    mandatory.

7          Do you understand that?

8          THE DEFENDANT:  I do, your Honor, yes.

9          THE COURT:  Does the Government have an estimate of

10   what the restitution is here?

11         MR. WEINTRAUB:  I don't believe that's been

12   calculated yet.

13         THE COURT:  You don't have a sort of a general idea

14   how much money was lost by the victims of the scheme?  They

15   were clients of Biscayne Capital, right?

16         MR. UDOLF:  That's right, your Honor.  Mr. Martinez

17   -- and, again, because the allegations are part of a broader

18   Ponzi scheme, Mr. Martinez's clients at least initially lost

19   several million dollars.  I don't think we have a precise

20   measure of how many of those clients recovered what percentage

21   of their money --

22         THE COURT:  How would they have recovered it?

23         MR. UDOLF:  During the course of the Ponzi scheme,

24   certain clients were then paid back using other client moneys.

25         THE COURT:  Then somebody else lost money?

ARRAIGNMENT/GUILTY PLEA

1          MR. UDOLF:  That's correct.

2          THE COURT:  So you think that it could be as high as

3    several million dollars?

4          MR. UDOLF:  For Mr. Martinez's clients, that's

5    correct, your Honor.

6          THE COURT:  All right.

7    BY THE COURT:

8          THE COURT:  So I don't have a precise number,

9    Mr. Martinez, but the Government would have to -- the victims

10   would have to come in and establish the amount of restitution

11   that they claim that they're due, and the Court would make a

12   determination about the amount.  But it could be -- according

13   to the Government, it could be as high as several million

14   dollars, and that's in addition to all those other penalties

15   that I've told you about.

16         Do you understand that?

17         THE DEFENDANT:  I do, your Honor.

18         THE COURT:  And the other thing about restitution is

19   it's not in my discretion.  If someone comes forward and shows

20   me that they lost money, I have to order it.  I don't have a

21   choice to say, well, you're poverty-stricken or anything like

22   that.  It doesn't make a difference.  I have to order that

23   restitution.  I want to make sure you understand that.

24         THE DEFENDANT:  I do understand, your Honor.

25         THE COURT:  Again, there is a special assessment.

ARRAIGNMENT/GUILTY PLEA

1    That special assessment is $100.  That has to be consecutive,

2    so that means you face a special assessment of $200.

3              Do you understand that?

4              THE DEFENDANT:  I do, your Honor.

5              THE COURT:  And what I also explained to you a

6    moment ago about denaturalization and removal, that would also

7    be a consequence of pleading guilty to this wire fraud count.

8              Do you understand that?

9              THE DEFENDANT:  I do understand that, your Honor.

10             THE COURT:  Now, in sentencing, one of the important

11   factors that the Court has to take into account is what your

12   sentencing guideline may be.

13             Have you discussed sentencing guidelines with your

14   counsel and how they're calculated?

15             THE DEFENDANT:  Yes, your Honor.

16             THE COURT:  Does the Government have an estimate of

17   what the guideline range would be here?

18             MR. WEINTRAUB:  Yes, your Honor.  For Count 1 the

19   estimated guidelines range, according to the guidelines, would

20   be 210 to 262 months.  Of course, there is a statutory maximum

21   that renders an effective guidelines range at 120 months.

22             In Count 2 the guidelines range would be 97 to 121

23   months.

24             THE COURT:  So that means that the effective

25   guideline range --

ARRAIGNMENT/GUILTY PLEA

1         MR. WEINTRAUB:  Because -- yes.  So --

2         THE COURT:  -- is ten years, because if Count 1 has

3    that --

4         MR. WEINTRAUB:  That's correct, your Honor.  The

5    effective guidelines range is 120 months.

6         THE COURT:  Okay.

7    BY THE COURT:

8         THE COURT:  So the sentencing guidelines would

9    recommend that I impose the maximum sentence on both counts,

10   which would be a ten-year term of imprisonment.

11        Do you understand that?

12        THE DEFENDANT:  I do, your Honor.

13        THE COURT:  Now, I am not required by law to impose

14   the sentence that the guidelines say should be imposed.  There

15   are other factors that the Court takes into account.  Some of

16   those factors include the seriousness of the offense, the need

17   to promote respect for the law, to provide punishment that's

18   just, concepts of deterrence, specific deterrence to your

19   becoming involved in crime again and then general deterrence.

20   Also, I have to consider the nature and circumstances of this

21   offense and your own background.  Those are just some of the

22   factors that the Court has to consider.

23        Do you understand that?

24        THE DEFENDANT:  I do, your Honor.

25        THE COURT:  I should to tell you --

ARRAIGNMENT/GUILTY PLEA

1           THE COURT:  Counsel, do you need to talk to your

2     client?

3           MR. UDOLF:  No, it's not necessary.

4           THE COURT:  If there's something you want to talk to

5     him about before we proceed, I'll --

6           MR. UDOLF:  No.  I just want -- was just advising

7     him, Judge, that the Court also takes into consideration what

8     other similarly situated defendants --

9           THE COURT:  That's right.  That's true.

10    BY THE COURT:

11          THE COURT:  In other words, I have to look at the

12    sentences that are given to other people who've engaged in

13    similar crimes so that there's no disparity between sentences

14    of people who have done similar things.  Your counsel is

15    exactly right.

16          Do you understand that?

17          THE DEFENDANT:  I do, your Honor, yes.

18          THE COURT:  Now, under the federal sentencing

19    system, there are no parole boards or parole commissions, so

20    that's unlike state court.  What that means is whatever

21    sentence you do receive will be pretty close to the actual

22    amount of time that you have to spend in prison.  You don't

23    have an opportunity to appeal to a parole board to get out

24    early, because there are no parole boards in this sentencing

25    system.

ARRAIGNMENT/GUILTY PLEA

1          Do you understand that?

2          THE DEFENDANT:  I do, your Honor.

3          THE COURT:  And finally, if you enter a guilty plea

4    today, your guilty plea will stand.  You can't come back to

5    court at the time of sentencing and say I changed my mind; now

6    I want to go to trial.

7          Do you understand that?

8          THE DEFENDANT:  I do, your Honor.

9          THE COURT:  Do you have any questions that you want

10   to ask me about the charges, your rights, or anything else

11   related to this matter that might not be clear?

12          THE DEFENDANT:  All clear, your Honor.

13          THE COURT:  Counsel, is there anything that you

14   would want me to discuss in further detail with your client?

15          MR. UDOLF:  I don't think that's necessary, Judge.

16          THE COURT:  Do you know any reason why he should not

17   enter pleas of guilty to these two charges?

18          MR. UDOLF:  No, I do not.

19   BY THE COURT:

20          THE COURT:  Mr. Martinez, are you ready to plead?

21          THE DEFENDANT:  I do, your Honor.

22          THE COURT:  How do you plead to the charge in Count

23   1 of the Information:  Guilty or not guilty?

24          THE DEFENDANT:  Guilty.

25          THE COURT:  How do you plead to the charge in Count

ARRAIGNMENT/GUILTY PLEA

1   2 of the Information:  Guilty or not guilty?

2           THE DEFENDANT:  Guilty, your Honor.

3           THE COURT:  Are you making these pleas voluntarily

4   and of your own free well?

5           THE DEFENDANT:  I do, your Honor.

6           THE COURT:  Has anyone threatened, forced, or

7   pressured you in any way to plead guilty?

8           THE DEFENDANT:  No, your Honor.

9           THE COURT:  Other than the agreement with the

10  Government, has anyone made you promises that have caused you

11  to plead guilty?

12          THE DEFENDANT:  No, your Honor.

13          THE COURT:  Has anyone promised you what sentence

14  you would receive from the Court?

15          THE DEFENDANT:  No, your Honor.

16          THE COURT:  All right.

17          So I need to hear from you in your own words what

18  you did in connection with the crimes that are charged.  We'll

19  take them separately.

20          The first one is Count 1, which is the conspiracy to

21  commit money laundering.

22          THE DEFENDANT:  Your Honor, I have some notes.  It's

23  okay that I --

24          THE COURT:  Yes.  You're reading from your notes?

25          THE DEFENDANT:  Thank you.

ARRAIGNMENT/GUILTY PLEA

1          THE COURT:  That's fine to read from your notes.

2     And you are telling the Court that everything that you're

3     reading from is accurate, correct?

4          THE DEFENDANT:  It is, your Honor, yes.

5          THE COURT:  Okay.

6          THE DEFENDANT:  During the dates stated in the

7     Information document that we have, I agreed that I opened a

8     few accounts outside of the United States for the benefit of a

9     third party, who was an Ecuadorian official who had authority

10    over grants of the government contracts for insurance

11    providers.  For years I helped get these funds into and out of

12    these Swiss bank accounts.

13         THE COURT:  Let me just interpret you for a moment.

14    The accounts that were outside of the United States were Swiss

15    bank accounts?

16         THE DEFENDANT:  Some of them, yes.

17         THE COURT:  Okay.

18         THE DEFENDANT:  For the benefit of the government

19    official totaling close to $2.6 million.

20         I agreed to paragraph 30 and 31 of the Information

21    document that you have, your Honor.  I met with the government

22    official Rivas quite a few times, one in Miami.  I performed

23    this function through the Swiss bank accounts to conceal the

24    fact that money was coming from Mr. Gomez, my cousin, and a

25    third party.

ARRAIGNMENT/GUILTY PLEA

1           Also during the time, I assisted another client in

2    preparing sham contracts to make another transaction appear

3    legitimate.  I agreed to overt acts as described on page 13 of

4    the Information document.  I admit to various transfers in the

5    overt acts between Swiss and U.S. banks.

6           The purpose of the laundering conspiracy was to get

7    bribes paid to officials and conceal connection between my

8    cousin Gomez and Mr. Rivas.

9           MR. UDOLF:  The government official?

10          THE WITNESS:  The government official, yes.

11   BY THE COURT:

12          THE COURT:  If you turn to page 3 of thee

13   Information at paragraph 9, is that the Gomez that you're

14   referring to?

15          THE DEFENDANT:  That is correct, your Honor.

16          THE COURT:  A citizen of Ecuador, and was the owner

17   of something called -- referred to in the information as

18   Introducer Company 1?

19          THE DEFENDANT:  That is correct, your Honor.

20          THE COURT:  And so the money that was coming from

21   your cousin was coming from that company for the purposes of

22   paying a bribe so another company could get contracts; is that

23   right?  With the Ecuadorian officials?

24          THE DEFENDANT:  I have understanding of that, your

25   Honor.

Rivka Teich CSR RPR RMR FCRR
Official Court Reporter

ARRAIGNMENT/GUILTY PLEA

1      THE COURT:  It says, for example, in the overt acts

2   on page 13, that you -- on December 12, 2014, you wired

3   310,000 through the Eastern District of New York to a Madison

4   Bank account in New York?

5      THE DEFENDANT:  Yes, your Honor.

6      THE COURT:  What was that?  Do you remember that

7   transaction?  What was it about?

8      THE DEFENDANT:  Your Honor, I don't remember the

9   exact nature of the transaction, unfortunately.

10      THE COURT:  But what were the purposes of wiring

11   money to the Madison Bank account?  What were the purposes of

12   doing that in connection with the conspiracy?  Why were you

13   wiring money to the Madison Bank account?

14      THE DEFENDANT:  Because they were designated for

15   Mr. Rivas, for the government official, your Honor.

16      THE COURT:  So it was a way of laundering the money

17   through this Madison Bank account back to Rivas?

18      THE DEFENDANT:  Yes, your Honor.

19      THE COURT:  Look at paragraph E.  It says on or

20   about June 15th you caused the Madison Bank account to wire

21   $100,000 to U.S. bank account in the name of Rivas.  Was that

22   one that was specifically getting -- laundering the bribe

23   money for Rivas or in connection with Rivas?

24      THE DEFENDANT:  Yes, it was in connection with

25   Rivas, your Honor.

ARRAIGNMENT/GUILTY PLEA

1       THE COURT:  Are there other technical elements of

2  the crime that the Government believes we need to establish

3  here?

4       MR. WEINTRAUB:  No, your Honor.  I believe

5  Mr. Martinez's allocution is sufficient as to Count 1.

6       THE COURT:  Just articulate, then, how the bribe

7  payments were a violation of the Foreign Corrupt Practices

8  Act, going through those elements.

9       MR. WEINTRAUB:  Would you like me to do so through

10  questions of the defendant?

11       THE COURT:  Sure.

12  BY MR. WEINTRAUB:

13       THE COURT:  Mr. Martinez, the payments that you just

14  discussed, did you understand what -- the payments you

15  discussed as going to Mr. Rivas or for the benefit of

16  Mr. Rivas, did you understand what the purpose and nature of

17  the payments were?

18       THE DEFENDANT:  Yes.

19       THE COURT:  And can you describe what those were.

20       THE DEFENDANT:  Were payments that my cousin, Jose

21  Gomez, had received to his account on benefit of Mr. Rivas.

22       THE COURT:  And do you understand that Mr. Rivas

23  would do anything or had done anything prior to that in order

24  to exchange or in order to obtain those payments?

25       THE DEFENDANT:  At this point, I can tell you yes.

ARRAIGNMENT/GUILTY PLEA

1          THE COURT:  Can you describe what your understand

2     that he did?

3          THE DEFENDANT:  Gomez apparently was receiving the

4     funds directly from the reinsurer company and he was

5     distributing these payments partially to Mr. Rivas.

6          THE COURT:  And was Mr. Rivas doing anything that

7     benefited the reinsurance company?

8          THE DEFENDANT:  Can you repeat that.

9          THE COURT:  Was Mr. Rivas doing anything to benefit

10     the reinsurance company in terms of insurance contracts or

11     providing or giving business --

12          THE DEFENDANT:  Oh, yes.

13          THE COURT:  Can you describe that a little bit.

14          THE DEFENDANT:  Yeah.  Mr. Rivas was the director or

15     manager or president of Seguros Sucre, which was a fiduciary

16     or a company that belonged to the Ecuadorian state, and he was

17     benefiting that insurance company for contracts.

18          THE COURT:  And you knew that at the time that you

19     were engaging in these activities, correct?

20          THE WITNESS:  Yes, your Honor.

21          MR. WEINTRAUB:  Your Honor, I believe that that

22     would satisfy the elements of the underlying FCPA charge,

23     with, of course, the understanding there are certain type of

24     elements that we discussed that I could go through.

25     BY THE COURT:

ARRAIGNMENT/GUILTY PLEA

1        THE COURT:  Well, did you also understand that by

2    doing these wire transactions that you were helping conceal

3    this bribe conspiracy?  In other words, you were helping

4    conceal the fact that these were bribes to Mr. Rivas?

5        THE DEFENDANT:  Yes, your Honor.

6        THE COURT:  And you agreed to do this with other

7    people, including your cousin; is that right?

8        THE DEFENDANT:  That is correct, your Honor.

9        THE COURT:  All right.

10        Let's turn to the second count, the wire fraud.

11        THE DEFENDANT:  On the second count, I agreed with

12    others to obtain money from new investors.

13        THE COURT:  New investors of what entity?

14        THE DEFENDANT:  Of Biscayne Capital.

15        THE COURT:  Okay.

16        THE DEFENDANT:  In order to pay other investors.

17        I also direct funds that were supposed or intended

18    for investments in real estate project to pay other investors.

19        THE COURT:  So you -- so that was the scheme, that

20    you got money from new investors by making false

21    representations to them that it was for real estate projects

22    when it wasn't for real estate projects?

23        THE DEFENDANT:  That is correct, your Honor.

24        THE COURT:  And then you in turn used the money to

25    pay off other investors?

ARRAIGNMENT/GUILTY PLEA

1          THE DEFENDANT:  That is correct, your Honor.

2          THE COURT:  And do you know what that type of scheme

3    is generally called?

4          THE DEFENDANT:  Ponzi scheme, your Honor.

5          THE COURT:  And that's what you were engaged in was

6    a Ponzi scheme?

7          THE DEFENDANT:  Apparently I worked for a company

8    that was involved in a Ponzi scheme.

9          THE COURT:  Well, you worked for a company.  Did you

10   know that's what the company was doing, and was it your

11   intention to further that objective of the company?

12         THE DEFENDANT:  Yes, your Honor.

13         THE COURT:  Let me just turn to overt act number F,

14   just as an example.

15         First of all, have you read over these overt acts?

16         THE DEFENDANT:  I have.

17         THE COURT:  And did you commit each of the overt

18   acts that are listed in the Indictment on pages 15 and 16?

19         THE DEFENDANT:  Yes, your Honor.

20         THE COURT:  Did you understand that they were in

21   furtherance of the scheme to take money from other people to

22   pay other clients off?

23         THE DEFENDANT:  Yes, your Honor.

24         THE COURT:  Just as an example, let's take overt act

25   number F.

ARRAIGNMENT/GUILTY PLEA

1          "On or about November 15, 2015, Martinez caused a

2     wire transfer of approximately $420,097 from a bank account of

3     Victim 1 to a Madison Bank account based in New York

4     purportedly for an investment of a proprietary product."

5          Did you do that?  Did you cause that wire transfer

6     to take place?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  And was it not for the -- in other

9     words, was that a lie to who is referred to as Victim 1?  In

10    other words, it was supposedly for an investment of a

11    proprietary product, but it was used for something else; is

12    that correct?

13         THE DEFENDANT:  Yes, your Honor.

14         THE COURT:  Does the Government think that I need to

15    ask any further questions?

16         MR. WEINTRAUB:  No, your Honor.

17         THE COURT:  Counsel, do you think that I need to ask

18    any further questions either with respect to Count 1 or

19    Count 2 to satisfy that there's a factual basis for the pleas?

20         MR. UDOLF:  No, your Honor.  I don't think it's

21    necessary.

22         THE COURT:  All right.

23         Based on the information given to me, I find that

24    the defendant is acting voluntarily, that he fully understands

25    both charges, his rights, and the consequences of his plea,

48

ARRAIGNMENT/GUILTY PLEA

1  and that there is a factual basis for the pleas to both Counts

2  1 and 2 of the information.  I therefore accept the plea of

3  guilty to those two counts.

4          What is the venue for the two counts here?

5          MR. WEINTRAUB:  For both counts there were wire

6  transfers that were made in facilitation and furtherance of

7  the conspiracies that passed through the Eastern District of

8  New York as well as communications that passed through the

9  Eastern District of New York.

10         THE COURT:  Do you agree that that's --

11  BY THE COURT:

12         THE COURT:  Well, Mr. Martinez, do you know what the

13  Eastern District of New York is?  It's Brooklyn, Queens, Long

14  Island, Staten Island.

15         Did these transactions, any of part of these

16  transactions occur in these boroughs?

17         THE DEFENDANT:  I have understanding that yes, your

18  Honor.

19         THE COURT:  Is there one of the overt acts that may

20  refer specifically to?

21         MR. WEINTRAUB:  There are overt acts that do refer

22  to wires from bank accounts in New York.

23         THE COURT:  Well, that's not the Eastern District of

24  New York, though, right?

25         MR. WEINTRAUB:  Your Honor, the Eastern District of

ARRAIGNMENT/GUILTY PLEA

1    New York --

2              MR. UDOLF:  Overt act B on page 13.

3              THE COURT:  Is that money went through the Eastern

4    District of New York?

5              MR. WEINTRAUB:  Yes, your Honor.  The Eastern

6    District encompasses also the waters surrounding the Eastern

7    District in the immediate vicinity.

8              THE COURT:  I know this is called money laundering,

9    but what do the waters have to do with the money?

10             MR. WEINTRAUB:  Wire transfers made and

11   communications made from somewhere outside of New York

12   entirely to somewhere in Manhattan, New York, do pass through

13   the waters surrounding -- the immediate waters surrounding the

14   Eastern District of New York, thereby -- that's one basis for

15   venue in the Eastern District of New York.

16             THE COURT:  Do you have another one?

17             MR. WEINTRAUB:  Your Honor, that's fundamentally the

18   basis.  There are a number of such transactions.  That is

19   fundamentally the basis.

20             THE COURT:  Have you discussed the issue of venue

21   with your client?

22             MR. UDOLF:  Candidly, I have not.

23             THE COURT:  Do you want to discuss with him briefly

24   if there's any issue about that, whether he'd be willing to

25   waive venue?

ARRAIGNMENT/GUILTY PLEA

1          MR. UDOLF:  I will, Judge.

2          THE COURT:  Just talk to him for a moment.  I just

3    wanted to eliminate the issue.

4          Let me just explain to you, Mr. Martinez.  You're

5    entitled to have the case prosecuted in the district where

6    part of the crime took place.  This is the Eastern District of

7    New York, which is Brooklyn, Queens, Long Island, and Staten

8    Island.  So if a crime took place in what they call another

9    venue, let's say the Southern District of New York, which is

10   Manhattan, if the crime took place in Manhattan, then you

11   would have a right to have the crime charged in Manhattan, be

12   before a judge in Manhattan, and that's called the Southern

13   District of New York.

14         You can waive venue, which means that you can agree

15   to have the case heard before a judge in Brooklyn, even though

16   some part of the case might not actually have occurred in

17   Brooklyn.

18         Now, the Government says they can prove that there

19   is a link to Brooklyn here, but also you could just waive the

20   right; in other words, say I'm not insisting on it being in

21   the appropriate venue.

22         But that's up to you, and maybe you just want to

23   discuss that with your counsel.

24         Counsel, you want to talk to him for a moment about

25   that.

ARRAIGNMENT/GUILTY PLEA

1          (Discussion off the record.)

2          MR. UDOLF:  Judge, this is an unusual case for me

3    because I inherited this case because the defendant had

4    indicated he wanted to cooperate.  I came in late in the game

5    because I think he needed a little hand holding to go through

6    the process that we're going through now.

7          I'm prepared to waive the issue of venue.

8          THE COURT:  Is your client prepared to waive it?

9          MR. UDOLF:  He is prepared to waive it.

10          There is another matter I ought to bring to the

11    Court's attention, and that concerns the issue of statute of

12    limitations.

13          It's in the context of that that I -- I think I

14    probably should make it clear on the record how much we are

15    waiving.

16          If you look at the overt acts that are alleged,

17    particularly with respect to Count 2, the last overt act,

18    overt act L, alleges that in March 2017 Mr. Martinez arranged

19    a meeting with a Weisson and a victim at a coffee shop to

20    discuss ways in which Weisson could cover and return

21    approximately $1.5 million from the victim's funds.

22          First of all, I would note for the record that we're

23    on March 23rd.  In that particular section of the --

24          I would note for the record that the Information

25    says that on or about March 2017, Martinez arranged a meeting.

ARRAIGNMENT/GUILTY PLEA

1    It doesn't -- that would be the last overt act in furtherance

2    of this conspiracy.  I would note if it occurred any time

3    before today, for instance, on March 1st, it would have been

4    outside of the statute of limitations.

5         I noticed this, and I inquired of one of the

6    assistant U.S. Attorneys on the case -- well, actually,

7    several of them, and I asked them what their theory was

8    regarding that, because I was concerned it might be committing

9    malpractice by entering the plea.

10        And they said to me, well -- their response was that

11   it was -- by that time Mr. Martinez had not affirmatively

12   withdrawn from the conspiracy, which I know is a traditional

13   argument that you would make with respect to the statute of

14   limitations.  I've been in counsel's shoes before.  I have

15   many years as an assistant U.S. Attorney.  I understand that.

16        But I've noticed that was kind of lame, and

17   I just -- I asked the Government to consider that ultimately

18   when he is sentenced that he possibly gave up that right to

19   assert that argument.  And I'm thinking now, out as of an

20   abundance of caution, maybe your Honor ought to inquire as to

21   whether or not the defendant -- on the record whether or not

22   the defendant understands the consequences of that particular

23   waiver, since it's a legitimately important factor.  And it

24   could go either way.

25        I think to protect the record for all of us, we

ARRAIGNMENT/GUILTY PLEA

1    probably ought to have some traditional inquiry as to that

2    particular waiver issue as well.

3            I'm sorry to bring it up now.  It just occurred to

4    me since we were waiving two possibly different things that we

5    probably ought to flesh that out now.

6            But we are -- I have talked to him about it, and he

7    is prepared to go forward with the plea, but I just think it

8    would be wise to make that -- and for the Court to make that

9    inquiry.

10           THE COURT:  So basically, the first -- the money

11   laundering count, the last overt act as to March 22, 2018 --

12           MR. UDOLF:  I don't think it's an issue.

13           THE COURT:  Is the only issue you think with respect

14   to the fraud count?

15           MR. UDOLF:  I think so.  That's what I shared with

16   the Government in my discussion with them.

17           THE COURT:  Does the Government have overt acts

18   after that one listed in the Indictment?  Under the

19   Information?

20           MR. WEINTRAUB:  There are -- the conspiracy

21   continued, certainly beyond that period of time.  There are

22   overt acts committed by members of the conspiracy beyond that

23   time.

24           This case, as you know, is related to other cases

25   before your Honor, and the charging documents in those cases

ARRAIGNMENT/GUILTY PLEA

1   do describe the continuation of this scheme beyond March of

2   2017.

3           That being said --

4           THE COURT:  The last overt act that you put is March

5   of 2017 in the Information that you filed.  Shouldn't have you

6   alleged an overt act that was clearly within the statute?

7           MR. WEINTRAUB:  Your Honor, the Information as

8   written I think is still within the statute, given the

9   phraseology of it.  And that overt act described in

10  subparagraph L --

11          THE COURT:  Well, you say "in between August 2013

12  and March of 2017."  That's what you say in the beginning.  So

13  that could or could not be within the statute of limitations.

14  I mean, we are at March 24th.  So it's arguably within, but

15  then your overt act -- are you representing that what occurred

16  in paragraph L occurred after March 24th?

17          MR. WEINTRAUB:  I'm not making that representation.

18  But there could be a -- the scheme did continue after this.

19  There were continued overt acts by co-conspirators after

20  March 2017.

21          The specific incident that occurred in March 2017,

22  it wasn't just Mr. Martinez's failure to remove himself from

23  the conspiracy.  What occurred in March 2017 was an act in

24  furtherance of the conspiracy, and again thereafter the

25  conspiracy continued and Mr. Martinez did not take steps to

ARRAIGNMENT/GUILTY PLEA

1    exit the conspiracy.

2            THE COURT:  The plea agreement makes no reference to

3    waiving statute of limitations defense or venue, correct?

4            MR. WEINTRAUB:  Not with respect to this.  It does

5    with respect to the forfeiture aspects of it, but not with

6    respect to the substantive.

7            THE COURT:  Let me make sure you understand

8    something, Mr. Martinez.

9            The Government has to bring charges within what they

10   call a statute of limitations.  And the statute of limitations

11   for these offenses, if I'm correct, is five years.

12           MR. WEINTRAUB:  Yes.

13           THE COURT:  So if you committed criminal conduct

14   that was six years ago, let's say, it would be too late to

15   charge you with that today.

16           Do you understand that?

17           THE WITNESS:  I do, your Honor.

18           THE COURT:  Now, the Government believes that they

19   have conduct that is within the five years that they can

20   prove.  But I want you to understand that in pleading guilty

21   today -- and I think this is --

22           Counsel, you correct me if I'm wrong, but that part

23   of his decision to plead guilty is that he agrees not to raise

24   this argument that the statute of limitations precludes his

25   being charged with these offenses.  Is that accurate that he

ARRAIGNMENT/GUILTY PLEA

1    agrees not to raise that argument, since it's kind of close

2    here as to whether it's within the statute?

3            MR. UDOLF:  That's correct.  I think the argument

4    could go either way if litigated before the Court.  But I

5    think it's something that should be -- and, frankly, I would

6    want the Court to know that when it comes sentencing that he

7    was willing to -- because of his cooperation, he was willing

8    to waive a very important, significant defense.

9            THE COURT:  But you've explained all of this to him?

10           MR. UDOLF:  I have.

11           THE COURT:  And, Mr. Martinez, do you understand

12   what I'm saying to you that this is an issue that you've

13   agreed you're going to raise, and you're pleading guilty

14   understanding that it's an argument you possibly could have

15   made and might have been successful, but you're not going to

16   make that argument about the statute of limitations?

17           Do you understand that?

18           THE WITNESS:  Yes, your Honor.

19           THE COURT:  And are you willing to give up the right

20   to make that argument?  You can't make it -- you wouldn't be

21   able to make it to a higher Court of Appeals or in a

22   collateral proceeding, a habeas corpus proceeding.  By

23   pleading guilty today, understanding that that's an issue, you

24   would be give willing up that right.

25           Do you understand that?

ARRAIGNMENT/GUILTY PLEA

1          THE WITNESS:  Yes, your Honor.

2          THE COURT:  And do you wish to give up that right?

3          THE WITNESS:  I will give it away, your Honor.

4          THE COURT:  Well, again, having clarified that let

5    me just once again that I find the defendant is acting

6    voluntarily, that he fully understands the charges, rights,

7    and the consequences of his plea and that there is a factual

8    basis for the plea.

9          So I'll once again accept the plea of guilty to

10   Counts 1 and 2.

11         Can we just get a sentencing schedule when the PSR

12   is due.

13         THE COURTROOM DEPUTY:  So I have sentencing

14   scheduled for June 28th at 10:00 o'clock.  The Government will

15   respond to the PSR by May 31st and defendant shall respond or

16   reply by June 14th.

17         THE COURT:  When is the -- we always give a date for

18   the PSR to be disclosed.

19         THE COURTROOM DEPUTY:  PSR will be disclosed by

20   May 17th.

21         THE COURT:  Okay.

22         If there is any need to alter that schedule, the

23   parties can advise the Court by letter of the need to alter

24   that schedule.

25         MR. UDOLF:  Thank you, your Honor.

ARRAIGNMENT/GUILTY PLEA

1          THE COURT:  Is there bond here?

2          MR. WEINTRAUB:  We're going to do that before the

3    magistrate judge.

4          THE COURT:  All right.  Great.

5          Anything further, Counsel?

6          MR. UDOLF:  No, thank you.

7          MR. WEINTRAUB:  Nothing further.  Thank you.

8          (Whereupon, the matter was concluded.)

9                    *    *    *    *    *

10   I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.

11

12   */s/ Rivka Teich*
     Rivka Teich, CSR RPR RMR FCRR
13   Official Court Reporter
     Eastern District of New York

14

15

16

17

18

19

20

21

22

23

24

25